UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   No. 3:11-CV-253 JD<br>) |
| DIVA'S HOUSE OF STYLE and ELIZABETH BOND, | )<br>)<br>) |
| Defendants. | ) |

OPINION AND ORDER

On June 16, 2011, Plaintiffs Coach, Inc. and Coach Services, Inc. filed a ten count complaint against Defendants Diva's House of Style (now defunct and never made a legally cognizable business entity) and its owner Ms. Elizabeth Bond seeking damages and injunctive relief for trademark and trade dress infringement, counterfeiting, and false advertising under the Lanham Act (15 U.S.C. §§ 1114, 1116, 1117, 1125(a), 1125(c)), copyright infringement under the Copyright Act (17 U.S.C. § 501, *et seq.*), trademark infringement and unfair competition under state common law, and forgery and counterfeiting under state statutory law [DE 1]. In summary, Plaintiffs allege that Defendants advertised and sold Coach labeled products which Coach does not manufacture (in other words, knock-offs) and are not authorized retailers of Coach merchandise.

Now before the Court is Coach's motion for summary judgment on liability [DE 20] relative to Plaintiffs' Lanham Act claims for trademark infringement, unfair competition (false

designation), and counterfeiting,[1] and requisite *pro se* litigant notice filed consistent with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982) [DE 19-1]. Defendants, proceeding *pro se*, did not respond to the motion, even though the Court explicitly advised Ms. Bond that her company could not proceed *pro se* and that judgment could be entered against them should she fail to respond to the summary judgment motion [DE 23; DE 25].

For the reasons that follow, Coach's motion for summary judgment on liability is GRANTED [DE 20].

## I.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1).

The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Seventh Circuit has cautioned against weighing evidence at summary judgment, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010), and it has also said that "a factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th

---

[1] Coach did not specifically move for summary judgment on its remaining claims, and thus, the Court does not consider the same.

Cir. 2009). "Summary judgment cannot be used to resolve swearing contests between litigants." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citation omitted).

If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper–even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (holding that a failure to prove one essential element to the party's case which it bears the burden of proof on "necessarily renders all other facts immaterial")). Because Defendants failed to timely respond to Coach's Local Rule 56-1 statement of material facts, the Court considers the facts undisputed for purposes of the motion, consistent with Fed. R. Civ. P. 56(e)(2), and deems those facts admitted to the extent that Coach's statement is supported by evidence in the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). "However, a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56-1, does not, of course, automatically result in judgment for the movant." *Id*. Coach must still demonstrate that it is entitled to judgment as a matter of law. *Id*. Although Defendants have not provided their own version of the facts, the Court still views all of the facts asserted by Coach in the light most favorable to Defendants, the nonmoving party, and draws all reasonable inferences in Defendants' favor. *Id*. The Court can also grant summary judgment on liability, while later holding a trial on damages. *See* Fed. R. Civ. P. 42(b); *Guzman v. City of Chi*., 689 F.3d 740 (7th Cir. 2012).

## II.  FACTS

The facts of this lawsuit are uncontested. In fact, Ms. Bond has already admitted to having sold an "imitation purse to a representative from Coach" and to selling knock-off Coach

products bearing marks confusingly similar to the Coach Marks as alleged in the complaint [DE 6; DE 7; DE 17; DE 23; DE 25].  Given these admissions, it is not surprising that Ms. Bond did not respond to the motion and dispute the facts set forth by Coach and the Court finds that the following uncontested facts are supported by the record evidence.

Coach, a company founded more than sixty years ago as a family-run workshop in New York, now engages in the manufacture, marketing, and sale of fine leather and mixed material products including handbags, wallets, accessories including eyewear, footwear including shoes, jewelry, and watches [DE 1 at 3].  Coach sells its goods through its own specialty retail stores, department stores, catalogs, and via an Internet website throughout the United States [DE 1 at 3]. Coach is the owner of various valid United States Federal Trademark Registrations, as listed in pages four through eight of the complaint [DE 1 at 4-8] (collectively referred to as the "Marks"), which Coach has used in connection with the advertisement and sale of its products and has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Coach Marks [DE 1 at 3].  As a result, products bearing the Coach Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Coach, and have acquired strong secondary meaning [DE 1 at 3-4]. Further, Coach products have also become among the most popular in the world, as Coach currently has annual global sales exceeding three billion dollars [DE 1 at 4].

Coach alleges that Defendants, well aware of the fame, strength, and goodwill associated with the Coach brand, have been engaged in designing, manufacturing, advertising, promoting, distributing, selling, or offering for sale "infringing products" bearing logos and source-identifying indicia and design elements that are studied imitations of its Marks [DE 1 at 10-11].

By way of failing to timely respond or object to Plaintiffs' February 7, 2012 Request for Admissions [DE 20-1, Exb. A, Request for Admissions to Defendants; DE 20-2, Exb. B, Declaration of Attorney Alejandro Valle], consistent with Fed. R. Civ. P. 36 *and Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009), Defendants have admitted that Ms. Bond:

- a. "sold merchandise bearing the Marks at Issue" (Request No. 1);
- b. had "no contractual authorization from Coach to use the Marks at Issue" (Request No. 2);
- c. "personally hired, trained, supervised and otherwise directed all employees of [her] Diva's store, if any, at all relevant times" (Request No. 7);
- d. "sold accessories on a retail basis to retail customers at all relevant times" (Request No. 8);
- e. "had sole and/or final decision making authority with regard to the selection, purchase, display and sale of merchandise from [her] store and otherwise in connection with [her] sale of Coach-labeled merchandise" (Request No. 10);
- f. was "displaying and/or offering for sale non-authentic Coach-labeled merchandise at [her] store, home and through Facebook, at the time [she] offered such merchandise for sale through these avenues" (Request No. 12);
- g. was "the moving, active conscious force behind the sale of non-authentic Coach-labeled merchandise described in Plaintiffs' Complaint" (Request No. 14);
- h. "sold and/or offered for sale [the non-authentic Coach-labeled items] as described in Plaintiffs' Complaint [which] bore marks that were identical, confusingly similar and/or substantially indistinguishable from authentic Coach marks/Marks at Issue" (Request No. 15);
- i. had an "intent in connection with selling non-authentic Coach labeled items which [she] did not have authority to sell or offer for sale . . . to profit from the value associated with Coach's distinctive, proprietary marks/Marks at Issue" (Request No. 16);
- j. acknowledged that "Coach has federal registrations for all of its Coach Marks/Marks at Issue which it seeks to protect in this matter" (Request No. 17); and,
- k. engaged in "violations of the Lanham Act as alleged in Plaintiffs' Complaint [which] were willful in nature" (Request No. 19).

[DE 20-1, Exb. A, Request for Admissions to Defendants].

Also included within the First Request for Admissions which Defendants failed to respond or object to in any way are the following additional facts now deemed admitted:

    a.    Ms. Bond "never purchased any items directly from Coach for later resale to consumers" (Request No. 3);

    b.    the "merchandise bearing the Marks at Issue have been purchased and/or were being offered for sale at Diva's House of Style, Fort Wayne, Indiana, a store which [Ms. Bond] owned and/or operated at all relevant times" (Request No. 4);

    c.    the "merchandise bearing the Marks at Issue have been purchased and/or were being offered for sale at the residential address of Defendant Bond, 23066 Johnathon Court, Elkhart, Indiana 46516" (Request No. 5):

    d.    the "merchandise bearing the Marks at Issue have been purchased and/or were being offered for sale via Defendants' Facebook page, electronic and cellular communications, and text messages" (Request No. 6);

    e.    Ms. Bond "alone received and/or controlled revenues, if any, from the sale activity at [her] Diva's store and otherwise in connection with [her] sale of Coach-labeled merchandise" (Request No. 9);

    f.    Ms. Bond "knew that [she was] purchasing non-authentic Coach labeled merchandise to sell in [her] store, home and through Facebook, at the time [she] made such purchases" (Request No. 11);

    g.    Ms. Bond "knew that [she was] selling non-authentic Coach labeled merchandise at [her] store, home and through Facebook, at the time [she] sold such merchandise through these avenues" (Request No. 13); and,

    h.    "the non-authentic Coach-labeled items [Ms. Bond] sold and/or offered for sale as described in Plaintiffs' Complaint bore marks that were counterfeits of authentic Coach marks/Marks at Issue" (Request No. 18).

[DE 20-1, Exb. A, Request for Admissions to Defendants].

### III.  DISCUSSION

Here, Coach has presented sufficient evidence to support the motion for summary judgment. The Court has independently verified that the material facts presented by Coach are uncontested, and show that no genuine dispute as to any material fact exists and that summary judgment is appropriate on the Lanham Act claims of trademark infringement, unfair competition, and counterfeiting.

A.      **Trademark Infringement/Unfair Competition (False Designation)**

Under the Lanham Act, a party may assert claims for, inter alia, trademark infringement, *see* 15 U.S.C. § 1114(1) (in this case, Count II), or unfair competition (false designation), *see* 15 U.S.C. § 1125(a) (in this case, Count IV).  To prevail on either claim, a plaintiff must establish that:  (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers. *CAE, Inc. v. Clean Air Engineering, Inc.,* 267 F.3d 660, 673-74 (7th Cir. 2001) (citations omitted). Registration under the Act affords the registrant a rebuttable presumption of validity. *Id*. (citing 15 U.S.C. § 1115(a)).  Whether consumers are likely to be confused about the origin of a defendant's products or services is ultimately a question of fact. *AutoZone, Inc. v. Strick,* 543 F.3d 923, 929 (7th Cir. 2008) (citations omitted). That question of fact may be resolved on summary judgment only "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Id*. (other citations omitted).

1.      **Protectable Marks**

Coach has introduced facts establishing that its Marks, as identified in the Complaint, are federally registered, and Defendants admit that Coach owns these trademark registrations and that their intention in selling non-authentic Coach-labeled items was to profit from the value associated with the Marks.  Defendants have produced no evidence to rebut the presumption of the Marks' validity, and the registration of the Marks provided Defendants with sufficient notice of Coach's ownership and exclusive rights in the Marks.  Thus, Coach has met its burden of proving the first element of federal trademark infringement and unfair competition. *See Polo Fashions, Inc. v. Clothes Encounters*, No. 84 C 2491, 1985 WL 96 *3 (N.D. Ill. July 17, 1985) (holding that the first element of federal trademark infringement was satisfied when the plaintiff

introduced evidence of registration and the defendant conceded that the plaintiff owned the registrations at issue and that the trademarks were valid). Where, as here, there is no evidentiary conflict as to the existence of the valid protectable Marks, it is appropriate for the Court to determine the remaining issue of whether the challenged Marks are likely to cause confusion among consumers. *See Tony Jones Apparel, Inc. v. Indigo USA LLC,* No. 03 C 0280, 2003 WL 22220193 *2  (N.D. Ill. Sept. 24, 2003) (citation omitted).

## 2. Confusion Among Consumers

In order to assess the likelihood of confusion, the Seventh Circuit applies a seven factor test: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc.*, 543 F.3d at 929 (citation omitted). Although no single factor is dispositive, usually "the similarity of the marks, the defendant's intent, and actual confusion" are particularly important considerations. *Id*.

### a. *Similarity of the Marks in Appearance and Suggestion*

To determine whether two marks are similar, we view the marks as a whole. *AutoZone, Inc.*, 543 F.3d at 929 (citation omitted). We must compare the marks "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Id*. at 930 (other citations omitted). "[T]he test is not whether the public would confuse the marks, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id*. The court should therefore "consider whether the customer would believe that the trademark

owner sponsored, endorsed or was otherwise affiliated with the product." *Id*.

While Coach did not produce photographs of the alleged infringing products, it is undisputed that Defendants offered for sale and sold handbags, shoes, and other infringing accessories which "bore marks that were identical, confusingly similar and/or substantially indistinguishable from" the federally registered Coach Marks at issue. No facts distinguish the authentic Coach Marks from the non-authentic marks which Defendants purchased, displayed, and sold. In addition, the goods in question are women's handbags, shoes, and accessories, which consist of the same type of products sold by Coach. As a result, the goods involve a similar class of purchasers, although Coach sells other accessories including eyewear and jewelry. Further, both Coach and Defendants offer their products through retailers and via the Internet, which supports a finding that their goods move through similar channels of trade. Therefore, there is no genuine issue of material fact about the similarity of the Marks, and this factor weighs in favor of finding a likelihood of confusion.

### b. *Similarity of the Goods*

The issue in determining the similarity of the goods is whether the goods in question are related in the minds of the public. *See Eli Lilly & Co. v. Natural Answers, Inc*., 233 F.3d 456, 463 (7th Cir. 2000) (noting that the inquiry is whether the goods are the kind that the public might attribute to a single source (i.e. the holder of the mark)). The rights of an owner of a registered trademark extend to any goods or services that, in the minds of the consumers, might be put out by a single producer. *AutoZone, Inc.*, 543 F.3d at 931.

The infringing marks used by Defendants appeared on women's accessories, including handbags and shoes. For decades, one of the major classes of goods which bear Coach's

registered Marks is on handbags, shoes, and other accessories. Therefore, there is no dispute that consumers would reasonably attribute the goods bearing what appears to be legitimate Coach Marks to a single source—Coach.

### c. *Area and Manner of Concurrent Use of the Goods*

"The third factor in the likelihood of confusion analysis assesses 'whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties.'" *Autozone, Inc.*, 543 F.3d at 932 (citing *CAE, Inc.*, 267 F.3d at 681) (quoting *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 442 (7th Cir.1990)). Although Coach did not address this factor in great detail, it is undisputed that Coach advertises and promotes products bearing the Coach Marks throughout the United States, and that Defendants were selling the non-authentic products in Fort Wayne and Elkhart, Indiana. Defendants do not "cite any authority, however, for conditioning infringement on the scale of the parties' respective operations, and for good reason: that proposition is undoubtedly incorrect." *See id*. "[T]rademark law makes no exception for the localized infringer." *Id*. Here, the parties here would be in direct competition for those looking to purchase Coach handbags, shoes, and other accessories either on the Internet or in retail shops. Accordingly, the undisputed facts show that area and manner of use of both parties' goods is concurrent.

### d. *Degree of Care Likely to be Exercised by the Purchasers*

In considering the degree of care likely to be exercised by purchasers of both products (authentic and non-authentic), the Court notes that "[t]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE, Inc.*, 267 F.3d at 681. Because the

marks and the goods in question are virtually indistinguishable, it would require a great deal of care for purchasers to differentiate between the goods sold by Coach and Defendants. However, as admitted by Coach, its prices are high, given that an authentic Coach handbag costs almost $300.00, while one handbag sold by Ms. Bond cost only $50.00.  Although there is no evidence in the record that Coach customers are particularly sophisticated or deliberative, even considering possible post-sale confusion, the Court finds that when viewing the evidence most favorably to the Defendants, this factor weighs in favor of Defendants—a reasonable fact finder could infer that the average consumer may spend a great deal of time and effort when making the decision to purchase an expensive Coach accessory.

### e. *Strength of the Trademark Owner's Marks*

"The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone, Inc.*, 543 F.3d at 933 (citing 2 McCarthy § 11.73, at 11–169 to 170 (2008)) (quoting *Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111 (6th Cir. 1996)). The strength of a mark usually corresponds to its economic and marketing strength. *Id*. (citation omitted). A mark's strength is measured both by its conceptual strength (distinctiveness) and its marketplace strength (secondary meaning). *See In re Chippendales USA, Inc*., 622 F.3d 1346, 1353-54 (Fed. Cir. 2010) (citing 2 McCarthy, supra, § 11.83).

In this case, the evidence in the record undisputedly supports the conclusion that the various Coach Marks have plenty of economic and marketing strength. *See Coach, Inc. v. Ocean Point Gifts,* No. 09–4214 (JBS), 2010 WL 2521444 *4 (D.N.J. June 14, 2010) (noting that plaintiff has shown that the relevant Coach marks are "famous" and Defendant's actions lessen the capacity of such marks to identify and distinguish Coach products).  Coach products are sold

nationwide and have generated billions of dollars' worth of income in over sixty years. Further, nothing in the record calls into question Coach's uncontested assertion that it has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Coach Marks. The substantial nature of Coach's expenditures and profits, in conjunction with the distinctive nature of the various Coach Marks, constitutes evidence of strength without any genuine issue of material fact, thereby making confusion due to the similarity of the marks more likely.

### f. *Any Evidence of Actual Confusion*

Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists. *CAE, Inc.*, 267 F.3d at 685 (citations omitted). Because evidence of actual confusion is not essential, Coach's failure to introduce evidence of actual confusion is not fatal to an overall finding of a likelihood of confusion.

### g. *Defendant's Intent*

A finding of intent to deceive or confuse is not required to establish liability for trademark infringement, but the factor is relevant where the Defendants intended to palm off its products as those of Coach. *See CAE, Inc.*, 267 F.3d at 686 (citations omitted). In this case, Defendants have admitted to knowingly displaying and/or offering for sale non-authentic Coach-labeled merchandise, that the intent in connection with selling the non-authentic Coach-labeled items was to profit from the value associated with Coach's distinctive, proprietary Marks, and that the violations of the Lanham Act were willful in nature. Defendants purchased and resold products bearing substantially similar, if not identical, Coach Marks because they were

attempting to "trade off" on Coach's Marks. Ultimately, there is no genuine issue of material fact that Defendants knowingly adopted Marks similar to Coach's, with the intent to mislead consumers into believing that the products were affiliated with Coach.

### *h.     Balancing Factors*

The seven factor test, based on the undisputed circumstances of this case, weighs overwhelmingly in favor of Coach, and the Court concludes that Coach has shown that the non-authentic marks intentionally used by Defendants on the same products are substantially similar to the federally registered Coach Marks, and that no reasonable juror could conclude that there is no likelihood of confusion. Therefore, Coach's motion for partial summary judgment as to Defendants' liability for trademark infringement is granted.

In addition, because the same analysis that applies to federal trademark infringement is used in assessing the merits of Coach's claim of unfair competition claim under the Lanham Act, this claim shares the same fate as the infringement claim because the undisputed facts of this case satisfy both elements of a claim for federal trademark infringement. Therefore, Coach's motion for partial summary judgment as to Defendants' liability for unfair competition under the Lanham Act is granted.

### B.     **Counterfeiting**

To establish counterfeiting, *see* 15 U.S.C. § 1114 (in this case, Count I), a plaintiff must establish four elements beyond mere infringement or false advertising: first, the mark must be "counterfeit," meaning "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; *see also* 15 U.S.C. § 1116(d)(1)(B)(i). Second, the mark must be registered on the U.S. Patent and Trademark

Office's principal register for use on the same goods or services for which the defendant uses the mark. *See id.* § 1116(d)(1)(B)(i). Third, the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced. *Id.* § 1116(d)(1)(B). Finally, the defendant must have acted with knowledge and intent. *See id.* § 1117(b).

As discussed above, Coach has satisfied the elements of counterfeiting under the Lanham Act—as Defendants have admitted that the non-authentic Coach-labeled items sold or offered for sale bore marks that were counterfeits of the authentic Coach Marks, that Coach's Marks were registered for use on the same goods for which Defendants used the marks without authorization, and that Defendants did so intentionally and willfully. *See Coach, Inc. v. Cellular Planet,* No. 2:09-cv-00241, 2010 WL 1853424 *4 (S.D. Ohio May 7, 2010) (["t]here is also little doubt that the counterfeit use of Coach's marks is likely to cause confusion, mistake, or deceive the public because the entire purpose of a counterfeit good is to mislead, deceive and confuse customers and the public as to the origin and authenticity of the goods offered).

Therefore, Plaintiff's motion for partial summary judgment as to Defendants' liability for counterfeiting under the Lanham Act is granted.

## C.     Ms. Bond's Individual Liability

The circumstances that allow recovery directly against individual corporate officers and agents is litigated with far less frequency than one might expect. *See Century 21 Real Estate, LLC v. Destiny Real Estate Properties*, No. 4:11-CV-38 JD, 2011 WL 6736060 *6-7 (N.D. Ind. Dec. 19, 2011). Long ago, the Seventh Circuit took the position that individual officers are not ordinarily liable for the infringement of their corporation "in the absence of some special showing." *Id.* (citing *Dangler v. Imperial Mach., Co.*, 11 F.2d 945, 947 (7th Cir. 1926)).

The court in *Dangler*, held that "in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction." 11 F.2d at 947.  The *Dangler* court explained that an officer is held jointly liable with the company when he "acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability." *Id*. One district court has explained that "despite its vintage, *Dangler* remains the law of this Circuit." *Do It Best Corp. v. Passport Software, Inc*., No. 01 C 7674, 2004 WL 1660814 *11-12  (N.D. Ill. July 23, 2004) (citations omitted).

Just what qualifies as such a special showing has not always been consistent or clear. *See Century 21 Real Estate, LLC*, 2011 WL 6736060 *6.  *Dangler* itself implied, based on prior precedent, that officers were generally only liable when they acted outside of their official capacity to further their personal interests, but it did not foreclose other situations in which officers might be held liable. *See id.* The Court of Appeals has also upheld individual liability where there was evidence of "deliberate conduct on the part of the officers to use the corporation merely to carry on the infringing and unfair practices." *General Motors Corp. v. Provus*, 100 F.2d 562, 564 (7th Cir. 1938).  Finally—and though it seems to swallow the never-overturned rule of *Dangler*—the Court of Appeals has also held that a chief officer and manager of a corporation may be held personally liable where "he was at all times in control of the administrative and managerial policy of the corporation." *See Weller Mfg. Co. v. Wen Products, Inc.*, 231 F.2d 795, 801 (7th Cir. 1956). Other courts have reached similar conclusions,

15

extending liability to corporate officers who were proven to be "'a moving, active, conscious force' behind the corporation's infringement." *Ramada Franchise Systems, Inc. v. Boychuk*, 283 F.Supp.2d 777, 788–89 (N.D.N.Y. 2003); *see also Escobedo v BHM Health Assocs., Inc*., 818 N.E.2d 930, 933 (Ind. 2004) (the burden is on the party seeking to pierce the corporate veil to show by a preponderance of the evidence "that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice.") (citations omitted).

In this case, the undisputed material facts are sufficient to meet *Dangler's* "special showing" requirement. The complaint contains allegations concerning Ms. Bond's role in the infringement beyond the assertion (and admission) that she was the moving, active and conscious force behind the misconduct.  First, Coach alleges and Ms. Bond has admitted that she owned or operated at all relevant times Diva's House of Style, she personally hired, trained, supervised and otherwise directed all employees of her store, she had sole or final decision making authority with regard to the selection, purchase, display and sale of merchandise from her store and otherwise in connection with her sale of Coach-labeled merchandise, she alone received or controlled revenues, if any, from the sale activity at her store and otherwise in connection with her sale of Coach-labeled merchandise, and she knew that she was purchasing and selling non-authentic Coach labeled merchandise in her store.  Second, Ms. Bond specifically admitted as true Coach's allegation that she sold a non-authentic purse to a representative from Coach [DE 6, 7].

These facts clearly establish that Ms. Bond was the owner or operator of Diva's House of Style at the time of the alleged infringement and was directly involved with and had knowledge

of the infringement. In fact, Ms. Bond engaged in the misconduct herself. Therefore, as *Dangler* envisioned, Ms. Bond is not being held personally liable for her company's infringement based solely on her role or ownership interest, but she is being held personally liable because she personally participated in the purchase and sale of the infringing articles, used the company as an instrument to carry out her own willful and deliberate infringements, and did so to further her own personal interests. In fact, it is unclear whether Diva's House of Style was ever a legally cognizable business entity. Ultimately, there is no genuine issue of material fact that Ms. Bond was personally involved in the infringement and may be held personally liable for her store's infringement. *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004); *see also Microsoft Corp. v. Rechanik*, 249 Fed. Appx. 476, 478 (7th Cir. 2007).

## IV.  CONCLUSION

The undisputed evidence in this case is so one-sided that there can be no doubt about how the question should be answered. *See AutoZone, Inc. v. Strick,* 543 F.3d 923, 929 (7th Cir. 2008) (citations omitted). Based on the foregoing, Coach's motion for summary judgment on liability relative to its Lanham Act claims for trademark infringement, unfair competition, and counterfeiting against Defendants Diva's House of Style and Elizabeth "Beth" Bond is GRANTED [DE 20]. The finding of liability does not resolve issues related to damages and does not address any remaining claims in the complaint.

    SO ORDERED.

    ENTERED:  December 5, 2012

                                      /s/ JON E. DEGUILIO
                                   Judge
                                   United States District Court